IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

HOPE HYATT                                                                                                                          PLAINTIFF

VS.                                                            CIVIL ACTION NO. 3:11cv681-DPJ-FKB

MICHAEL J. ASTRUE, COMMISSIONER
OF SOCIAL SECURITY                                                                         DEFENDANT

## **REPORT AND RECOMMENDATION**

Hope Hyatt brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of the Social Security Administration. Presently before the Court are the parties' dispositive motions. Having considered the motions, the memoranda in support of the motions, and the administrative record, the undersigned recommends that this matter be remanded to the Commissioner for further consideration of whether Plaintiff meets the listing for mental retardation.

## **I. Procedural History and Administrative Record**

Plaintiff filed for a period of disability, disability insurance benefits (DIB), and supplemental security income (SSI) on March 9, 2009, alleging disability onset dates of January 1, 2008, and April 1, 2008, for her SSI and DIB applications, respectively. Her applications were denied both initially and on reconsideration, and she requested and was granted a hearing before an administrative law judge (ALJ). The ALJ issued a hearing decision on March 11, 2011, finding that Hyatt was not disabled. The Appeals Council denied review, thereby making the decision of the ALJ the final decision of the

Commissioner. Plaintiff then brought this appeal pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Hyatt was born on January 6, 1976, and was 35 years of age at the time of the ALJ's decision. She attended special education classes in school and obtained a GED. She has past work experience as a fast food cashier, waitress, and sales attendant. Her medical history is significant for seizures beginning in 2010 following a motor vehicle accident, and headache, neck, and lower back pain lasting several months following the accident. Her seizures are controlled with medication. There are references in the medical record to a history of depression and to polysubstance abuse, but there is no indication of any treatment for these conditions.

The main focus of Hyatt's appeal is her intellectual functioning. Plaintiff attended special education classes in school. When she was nine years of age, Hyatt was administered the Wechsler Intelligence Scale for Children-Revised (WISC-R) on two occasions; the first in connection with an application for disability benefits and the second in connection with evaluation of continued eligibility for special education services. Plaintiff achieved a verbal IQ of 72, a performance IQ of 77, and a full scale IQ of 72 on the first examination. The examiner concluded that Hyatt was functioning intellectually "within the borderline mentally retarded range with slight better developed and/or functioning performance and verbal abilities." Upon reevaluation by a different examiner a few months later, Plaintiff achieved scores of 59, 63, and 57, respectively. This examiner also included in her evaluation the results of the Vineland Adaptive Behavior Scales which had been completed by Hyatt's teachers. The examiner described Hyatt's scores in the

2

domains of communication, daily living skills, and socialization as depressed. The examiner opined that Hyatt was functioning intellectually within the mildly retarded range.

At the hearing, Plaintiff testified that she stays at home unless her mother or son needs her to accompany them on an errand. In testifying regarding her adaptive skills, she stated that she performs housekeeping tasks, can add and subtract, and can make out a grocery list with spelling errors. She further testified, however, that she had given up her youngest son for adoption because she was unable to care for him and that her youngest daughter lives with the father because of intervention from social services. Hyatt did not testify concerning any interests or social activities.

## II.  **The Decision of the ALJ**

In his opinion, the ALJ worked through the familiar sequential evaluation process for determining disability.[1] He determined that Plaintiff has the severe impairments of

---

[1] In evaluating a disability claim, the ALJ is to engage in a five-step sequential process, making the following determinations:

(1) whether the claimant is presently engaging in substantial gainful activity (if so, a finding of "not disabled" is made);

(2) whether the claimant has a severe impairment (if not, a finding of "not disabled" is made);

(3) whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Part 404, Subpart P, Appendix 1 (if so, then the claimant is found to be disabled);

(4) whether the impairment prevents the claimant from doing past relevant work (if not, the claimant is found to be not disabled); and

(5) whether the impairment prevents the claimant from performing any other substantial gainful activity (if so, the claimant is found to be disabled).

3

seizures and borderline intellectual functioning. At step three of the evaluation, he concluded that Plaintiff's impairments do not, either singly or in combination, meet or medically equal the criteria of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the listings). In assessing Plaintiff's residual functional capacity (RFC), the ALJ found that while Plaintiff's impairments could reasonably be expected to cause some of her alleged symptoms, her statements concerning the intensity, persistence and limiting effects of those symptoms were not credible to the extent alleged. He determined that Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels with the following nonexertional limitations: She should not perform work around hazards such as dangerous machinery, unprotected heights, open trenches, open flames, and that she should not drive at the workplace. Relying upon the testimony of a vocational expert (VE), the ALJ made a step four finding that Plaintiff could perform her past relevant work as a fast food cashier. The ALJ made an alternative finding at step five, based upon the VE's testimony, that Hyatt could perform other jobs in the local and national economies, including the jobs of counter attendant and assembler of small parts.

### III. Analysis

In reviewing the Commissioner's decision, this Court is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Muse v. Sullivan*, 925

---

*See* 20 C.F.R. §§ 404.1520 and 416.920. The analysis ends at the point at which a finding of disability or non-disability is required. The burden to prove disability rests upon the claimant throughout the first four steps; if the claimant is successful in sustaining her burden through step four, the burden then shifts to the Commissioner at step five. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

F.2d 785, 789 (5th Cir. 1991); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).  "To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept it as adequate to support a conclusion; it must be more than a scintilla but it need not be a preponderance. . . ." *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989) (quoting *Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987)).  If the Commissioner's decision is supported by substantial evidence, it is conclusive and must be affirmed, *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)), even if the court finds that the preponderance of the evidence is *against* the Commissioner's decision, *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

Hyatt's primary argument in support of reversal of the Commissioner's decision is that the ALJ erred in failing to find that she meets listing 12.05, the listing for mental retardation.  Listing 12.05 consists of an introductory paragraph, or "capsule definition," setting forth the diagnostic criteria for mental retardation, and four "severity prongs" (paragraphs A through D).  In order to satisfy the listing, a social security claimant must meet both the capsule definition and one of the four severity prongs. *Randall v. Astrue*, 570 F.3d 651 (5th Cir. 2009).  The capsule definition for mental retardation is as follows:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.

20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.05.  Although the ALJ did not make specific findings on any of the severity prongs, the parties do not dispute that Hyatt would meet

5

both the B and C criteria.² The real question is whether Hyatt meets that portion of the capsule definition requiring deficits in adaptive function manifested before the age of 22. The ALJ answered this question in the negative.

Adaptive functioning is generally associated with the day-to-day activities of independent living. The American Psychiatric Association has indicated that adaptive functioning refers to an individual's abilities in areas such as communication, self-care, home-living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety. *See* Diagnostic and Statistical Manual of Mental Disorders 41 (4th ed., Text Revision 2000) (DSM-IV). The Social Security Administration (SSA) has not adopted a standard of measurement for deficits in adaptive functioning. However, in the Technical Revisions to Medical Criteria for Determinations of Disability, 67 Fed. Reg. 20018-01 (April 24, 2002), 2002 WL 661740, the SSA states that the definition in listings 12.05 is "consistent with, if not identical to," the definitions of mental retardation used by the four major professional organizations in the United States that deal with mental retardation.³ *Id.,* 2002 WL 661740 at *8. Furthermore, the Technical Revisions state that in determining mental retardation, the Social Security Administration is allowed to use any of the measurement

---

²The "B" severity prong requires a valid verbal, performance, or full scale IQ of 59 or less. The "C" prong requires a valid verbal, performance, or full scale IQ of 60 through 70 *and* a physical or other mental impairment imposing an additional and significant work-related limitation of function.

³Three of these organizations are referenced in the Technical Revisions: The American Psychiatric Association, the American Association on Mental Retardation, and the American Psychological Association.

methods recognized and endorsed by one of these organizations. *Id.,* 2002 WL 661740 at *9.

Hyatt contends that the ALJ erred in his analysis of her adaptive functioning by failing to choose and apply one of these recognized methods of measurement. In support of her argument, she relies upon a Tenth Circuit case, *Barnes v. Barnhart,* 116 Fed. Appx. 934 (10th Cir. 2004), which interpreted the Technical Revisions to require the ALJ to choose and apply one of the four methods.

The Fifth Circuit has never addressed the issue of whether the use of one of these measurements is required. But several courts in this circuit have concluded that *some* measurement must be articulated and applied. *See, e.g., Blancas v. Astrue*, 690 F.Supp.2d 464, 483 (W.D. Tex. 2010) (remanding where ALJ "appear[ed] to have utilized an ad hoc approach" in determining adaptive functioning); *Durden v. Astrue*, 586 F.Supp.2d 828, 840 (S.D. Tex. 2008 (remanding where ALJ failed to explain the standard used); *Turner v. Astrue*, 2012 WL 5389679, at *4 (N.D. Tex. 2012) (stating court could not determine whether decision was supported by substantial evidence because ALJ failed to set out a standard for analysis of adaptive functioning). As one court has stated, "[I]t is not entirely clear whether the SSA meant to limit the ALJ to the use of [the four professional organizations'] standards alone. What is clear, however, is that some standard must be used in order for judicial review to be possible." *Miller v. Astrue*, 2008 WL 8053474, at *8 (S.D. Tex. 2008).

The ALJ based his findings regarding Hyatt's deficits in adaptive functioning on the facts that she had obtained her GED, had passed an oral driver's test, is able to drive a

vehicle, and, in the words of the ALJ, had worked "successfully" as a waitress and cashier, jobs which are classified as semi-skilled. The ALJ also noted that at the hearing, Plaintiff answered questions adequately and did not appear to have significant cognitive deficits. He did not, however, articulate any standard for determining the requisite level of deficiency; nor is there any explanation of what consideration, if any, he gave to the evidence which suggested problems in adaptive functioning, such as Hyatt's apparent inability to care for her children and her lack of any social activities. The ALJ's reliance on Hyatt's history of "successful" semi-skilled is also questionable: The discussion at the hearing of her work history indicates that her jobs as a waitress and cashier were part-time and of short durations.

Particularly in a case in which the evidence of adaptive functioning is ambiguous, the failure of the ALJ to articulate and apply a meaningful measure of adaptive functioning warrants remand. *See, e.g., Durden,* 586 F.Supp.2d at 840 (stating that articulation of the standard in evaluating adaptive function is particularly important where claimant had at least some deficits in adaptive functioning). This is such a case. Accordingly, the undersigned recommends that this matter be remanded in order that the ALJ may articulate and apply a meaningful standard to all of the relevant evidence in determining Plaintiff's adaptive functioning.

Hyatt's remaining argument regarding the ALJ's step three analysis is that the ALJ erred in denying her request for a consultative evaluation including IQ testing. An ALJ considering a disability claim has a duty to fully and fairly develop the relevant facts. *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000). The question of whether the ALJ fully

and fairly developed the record turns on whether the record contained sufficient evidence for him to make an informed decision. If it does, he need not have supplemented with additional evidence. *Hernandez v. Astrue* 269 Fed.Appx. 511, 515, (5th Cir. 2008). The obligation for an ALJ to develop the record further "is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). The record contains no mental evaluation of any sort since 1985, when Hyatt was nine years of age. In the opinion of the undersigned, an adequate record would necessarily include more recent testing and evaluation. The ALJ erred in failing to adequately develop the record concerning Hyatt's cognitive abilities.

For these reasons, the undersigned recommends that this matter be remanded to the Commissioner for further consideration of whether Hyatt meets the listing for mental retardation. On remand, the ALJ should obtain updated testing to determine Plaintiff's cognitive abilities.

Because remand is recommended, the undersigned finds it unnecessary to discuss the merits of Plaintiff's remaining arguments.

## IV. Conclusion

For the reasons stated herein, the undersigned recommends that Plaintiff's motion be granted, the Commissioner's motion be denied, and that this matter be remanded for proceedings consistent with this opinion. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within fourteen (14) days after being served with a

9

copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court. 28 U.S.C. § 636; Fed. R. Civ. P. 72(b); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Respectfully submitted, this the 25th day of January, 2013.

/s/ F. Keith Ball  
UNITED STATES MAGISTRATE JUDGE

10